PHYSICIANS INSURANCE COMPANY OF OHIO, Appellant,

v.

UNIVERSITY OF CINCINNATI HOSPITAL ARING
NEUROLOGICAL INSTITUTE, Appellee.

[Cite as *Physicians Ins. Co. of Ohio v. Univ. of Cincinnati Hosp. Aring
Neurological Inst.*, 146 Ohio App.3d 685, 2001-Ohio-3985.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–373.

Decided Dec. 6, 2001.

Robins, Preston, Beckett, Hammond & Sewards, Gary W. Hammond, Frederick A. Sewards and James McGovern, for appellant.

Betty D. Montgomery, Attorney General; Dinsmore & Shohl, L.L.P., Marilena R. Walters and Chanda R. Nichols, for appellee.

PEGGY BRYANT, Presiding Judge.

{¶ 1} Plaintiff-appellant, Physicians Insurance Company of Ohio, appeals from a judgment of the Ohio Court of Claims dismissing plaintiff's action against defendant-appellee, University of Cincinnati Hospital Aring Neurological Institute, for lack of subject matter jurisdiction pursuant to R.C. 3345.40. Plaintiff assigns a single error:

{¶ 2} "Monies paid by a malpractice liability insurer on behalf of its insured are not 'benefits' as that term is used in R.C. 3345.40(B)(2); therefore, the Court of Claims erred in dismissing PICO's [Physician Insurance Company's] contribution claim against a joint tortfeasor."

{¶ 3} Because the Court of Claims properly applied R.C. 3345.40(B)(2) to plaintiff's claim, we affirm.

{¶ 4} In 1989, Tracy Ashcraft was admitted to the University of Cincinnati Hospital ("UCH") for an evaluation of treatment options for uncontrolled epileptic seizures. Dr. Michael Privitera and Dr. George Morris, both UCH neurologists specializing in epilepsy, attended to Ashcraft and performed diagnostic testing to pinpoint the affected areas of his brain. Dr. Hwa Shain Yeh, a neurosurgeon specializing in epilepsy treatment, performed brain surgery on Ashcraft to correct his uncontrolled seizures by removing portions of Ashcraft's brain purportedly designated by Drs. Privitera and Morris. Despite the surgery, Ashcraft's seizures returned.

{¶ 5} In March 1991, Ashcraft filed a medical negligence claim in the United Stated District Court, Southern District of Ohio, against Dr. Yeh and the Mayfield Neurological Institute ("the Institute"). Ashcraft claimed that Dr. Yeh breached the standard of care by removing the wrong portion of Ashcraft's brain,

resulting in permanent brain injury to Ashcraft. Ashcraft also filed a medical negligence claim in the Court of Claims against UCH, who employed Drs. Privitera and Morris, asserting that those physicians also were medically negligent. The action was stayed pending the outcome of Ashcraft's lawsuit against Dr. Yeh and the Institute.

{¶ 6} On June 6, 1996, following a jury trial, a judgment was entered for Ashcraft in the amount of $4.25 million against Dr. Yeh and the Institute. Pursuant to a professional liability insurance policy it issued to Dr. Yeh and the Institute, plaintiff paid the full amount Dr. Yeh and the Institute owed on the judgment.

{¶ 7} Subrogated to Dr. Yeh's and the Institute's rights to bring an action, plaintiff, on March 6, 1998, filed an action for contribution in the Ohio Court of Claims against UCH, alleging that the hospital's neurologists were joint tortfeasors with Dr. Yeh and were proportionately liable in contribution. Specifically, the complaint alleged as follows:

{¶ 8} "12. Pursuant to a policy of insurance Plaintiff paid the entire judgment, plus post-judgment interest, entered against its insureds and *is subrogated to* and holds legal capacity to bring any and all claims of its insured against Defendant herein. [Emphasis added.]

{¶ 9} "13. By reason of the foregoing, Plaintiff is entitled to contribution from Defendant to the extent of Defendant's negligence."

{¶ 10} On February 28, 2001, the Court of Claims entered a decision and judgment entry granting UCH's motion to dismiss plaintiff's claim for contribution for lack of subject matter jurisdiction under R.C. 3345.40. Noting that plaintiff was seeking to recover monies it paid on a liability judgment on behalf of its insureds, the court concluded that plaintiff's cause of action against UCH was a subrogation claim against a state university. Relying on *Colonial Ins. Co. of California v. Ohio Univ.* (1999), 136 Ohio App.3d 36, 735 N.E.2d 946, the court further determined that it lacked subject matter jurisdiction pursuant to R.C. 3345.40(B)(2).

{¶ 11} In its single assignment of error, plaintiff asserts that because R.C. 3345.40(B)(2) does not apply to plaintiff's cause of action against UCH, the trial court erred in concluding that it lacked subject matter jurisdiction. At first blush, R.C. 3345.40(B)(2) does not appear to address actions such as plaintiff's complaint against UCH. Nonetheless, given the language employed in the statute, coupled with the Supreme Court's recent pronouncement in *Community Ins. Co. v. Ohio Dept. of Transp.* (2001), 92 Ohio St.3d 376, 750 N.E.2d 573, we are compelled to apply R.C. 3345.40(B)(2) with the result that plaintiff's action was properly dismissed in the trial court.

{¶ 12}  Pertinent to our determination is R.C. 2743.02(A)(1), in which the state waived immunity from liability "except that the determination of liability is subject to the limitations set forth in this chapter and, in the case of state universities or colleges, in section 3345.40 of the Revised Code * * *." While R.C. 2743.02(D) reduces recoveries against the state by the "aggregate of insurance proceeds, disability awards, or other collateral recovery received by the claimant," it, too, does not apply to actions against a state university under the circumstances described in R.C. 3345.40, where instead the collateral benefits provisions of R.C. 3345.40(B)(2) apply.

{¶ 13}  R.C. 3345.40(B), referred to in R.C. 2743.02(A)(1) and (D), states:

{¶ 14}  "Notwithstanding any other provision of the Revised Code or rules of a court to the contrary, *in an action against a state university* or college *to recover damages for* injury, death, or *loss to persons* or property *caused by an act or omission of the state university* or college itself, by an act or omission of any trustee, officer, *or employee of the state university* or college while acting within the scope of his employment or official responsibilities, or by an act or omission of any other person authorized to act on behalf of the state university or college that occurred while he was engaged in activities at the request or direction, or for the benefit, of the state university or college, the following rules shall apply[.]"  (Emphasis added.)

{¶ 15}  The parties do not dispute that at all times pertinent to this action, UCH was part of a "state university" within the meaning of R.C. 3345.40(B).  See R.C. 3345.011 and 3361.01(A).  R.C. 3345.40(B) applies to actions against a state university to recover damages for "loss," as well as personal injury and property damage, caused by an act or omission of an employee of the university while acting within the scope of his or her employment.  Plaintiff's action to recover the portion of the damages it paid on behalf of its insureds, and plaintiff's insured's "loss," arising from the allegedly tortious conduct of the university's employees, falls within the ambit of R.C. 3345.40(B).

{¶ 16}  In that case, R.C. 3345.40(B)(2) applies and provides:

{¶ 17}  "(2) *If a plaintiff receives* or is entitled to receive *benefits for* injuries or *loss* allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against the state university or college recovered by the plaintiff.  *No insurer or other person is entitled to bring a civil action under a subrogation provision in an insurance or other contract against a state university or college with respect to such benefits.*"  (Emphasis added.)

{¶ 18}  Accordingly, if a plaintiff receives "benefits" from an insurance policy for a "loss" referenced in section (B), the amount of "such benefits" is deducted

from any award to the plaintiff against a state university, and the insurer paying the plaintiff has no right to bring an action in subrogation against the university to recover the benefits the insurer paid its insured. The question to be resolved here is whether the limitations set forth in R.C. 3345.40(B)(2) apply to preclude plaintiff's recovery from UCH.

{¶ 19}  In a professional liability insurance policy, the insurer agrees to pay damages which the insured may become obligated to pay because of injury to a third party resulting from professional services rendered by the insured. See, generally, *Am. Policyholders Ins. Co. v. Michota* (1952), 156 Ohio St. 578, 46 O.O. 476, 103 N.E.2d 817. The "benefits" of such a policy, as that term is used in R.C. 3345.40(B), are the insurer paying the amount of damages arising out of the liability of the insured for professional negligence. Here, the benefit under the professional liability insurance policy between plaintiff, as the insurer, and Dr. Yeh and the Institute, as the insureds, was plaintiff's payment of the damages the insureds were obligated to pay under the court judgment arising from Ashcraft's medical negligence against plaintiff's insureds.

{¶ 20}  By its terms, then, R.C. 3345.40(B)(2) applies here: plaintiff's case involves a cause of action against a state university to recover the "loss" to plaintiff's insureds attributable to the negligence of UCH's employees. Payment of the amount for which UCH is or may be liable is part of the "benefit" plaintiff's insured received under plaintiff's professional liability policy.

{¶ 21}  The remaining issue is whether plaintiff's action against UCH with respect to the "benefits" was an action brought in subrogation. R.C. 3345.40(B)(2) clearly and unambiguously states that "[n]o insurer or other person is entitled to bring a civil action *under a subrogation provision* in an insurance or other contract against a state university or college with respect to such benefits." (Emphasis added.) If plaintiff's action against UCH was an action brought in subrogation, it is precluded under R.C. 3345.40(B)(2).

{¶ 22}  Plaintiff asserts that its claim against UCH is rooted in both contribution and subrogation because plaintiff was subrogated to Dr. Yeh's and the Institute's right to seek contribution against UCH for its proportionate share of the common liability to Ashcraft. Plaintiff asserts that the contribution component in this case distinguishes it from *Colonial Ins.*, on which the trial court relied.

{¶ 23}  Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. See *Am. Motorists Ins. Co. v. Olin Hunt Specialty Products, Inc.* (Sept. 20, 2001), Franklin App. No. 00AP–1313, 2001 WL 1098013, citing *Am. Ins. Group v. McCowin* (1966), 7 Ohio App.2d 62, 65, 36 O.O.2d 153, 218 N.E.2d 746. Plaintiff, as a subrogated insurer, stood in

the place of its insureds in seeking recovery from the university, and it had no greater right to recovery than that of its insureds. *Community Ins.* at 378, 750 N.E.2d 573.

{¶ 24}  Indeed, in paragraphs 12 and 13 of plaintiff's complaint against UCH, plaintiff specifically alleged that it was bringing the action for contribution against UCH pursuant to the policy of insurance with its insureds under which it "is subrogated to and holds legal capacity to bring any and all claims of its insured against Defendant herein." Plaintiff thus brought its action for contribution against UCH as a subrogated claim pursuant to its insurance policy with its insured.

{¶ 25}  While factual distinctions between this case and *Colonial Ins.* exist, the recent decision of the Supreme Court in *Community Ins.* directs our conclusion here. *Community Ins.* involved an insurance company's subrogation claim brought against the state to recover expenses the insurer had paid pursuant to an insurance policy on behalf of its insured as the result of tortious conduct of the state. In determining whether the insurer was entitled to recover from the state, the Supreme Court construed R.C. 2743.02(D), one of the pertinent statutory provisions noted above. R.C. 2743.02(D), like 3345.40(B)(2), provides that a claimant's recoveries against the state shall be reduced by the amount of insurance proceeds received under an insurance policy. In *Community Ins.*, the Supreme Court held that an insurer who has been granted a right of subrogation by a person on whose behalf the insurer has paid expenses, incurred as the result of tortious conduct of the state, is subject to R.C. 2743.02(D), which mandates a reduction in recoveries against the state by the amount of the insurance proceeds. According to the court, R.C. 2743.02(D) was not intended to operate in such a way as to shift financial risk to the state and away from insurers. Id.

■ {¶ 26}  Given the language of R.C. 3345.40(B)(2) and the *Community Ins.* decision, we conclude that R.C. 3345.40(B)(2) similarly was not intended to operate in such a way as to shift financial risk to the state and away from insurers. To the extent a plaintiff is not insured, R.C. 3345.40(B) permits recovery for a plaintiff against a state university for a state university's tortious conduct. See *Community Ins.*, supra, at 379, 750 N.E.2d 573. However, the statute provides that neither the plaintiff, nor an insurance company that is subrogated to the rights of the plaintiff, can recover any amounts paid under an insurance policy to cover the damage or loss to the plaintiff resulting from the tortious conduct of the university. As noted by the Supreme Court in *Community Ins.*, "The 'state can make the rational determination to permit recovery by an unprotected victim but deny subrogation to insurance carriers who can make actuarial computations and adjust premiums to compensate for payments to

policyholders who suffer damage at the hands of a political subdivision.'" Id. at 379, 750 N.E.2d 573, quoting *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. Thus, the holding in *Colonial Ins.* applies here: "Because R.C. 3345.40(B)(2) specifically excepts actions such as plaintiff's from the jurisdiction of the Court of Claims, that court lacked subject matter jurisdiction over plaintiff's complaint against defendant, a state university." Id. at 40, 735 N.E.2d 946.

{¶ 27} Given the applicability of R.C. 3345.40(B) to plaintiff's cause of action, we overrule plaintiff's single assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

BROWN and DESHLER, JJ., concur.